# EXHIBIT 1

SETTLEMENT AGREEMENT

This Settlement Agreement (Agreement) is entered into among the United States of America, acting through the United States Department of Justice and on behalf of the United States Small Business Administration (collectively the "United States"), Persico USA, Inc., and Verity Investigations, LLC (all hereafter collectively referred to as "the Parties"), through their authorized representatives.

RECITALS

A. Persico USA, Inc. ("Persico") is a Delaware Corporation with its principal place of business in Rochester Hills, Michigan. Persico manufactures and sells equipment for the automotive, rotomoulding, marine, and medical industries.

B. In early 2020, as part of the Coronavirus Aid, Relief, and Economic Security Act ("CARES Act"), Congress created the Paycheck Protection Program ("PPP"), a loan program that was administered by the United States Small Business Administration ("SBA"). In early 2021, SBA authorized a second series of PPP loans, generally referred to as "Second Draw" PPP loans.

C. On March 6, 2025, Verity Investigations, LLC ("Relator") filed a *qui tam* action in the United States District Court for the District of Delaware captioned *United States ex rel. Verity Investigations, LLC v. Persico USA, Inc.*, Civil Action No. 25-260-CFC, pursuant to the *qui tam* provisions of the False Claims Act, 31 U.S.C. § 3730(b) (the "Civil Action").

D. The United States contends that it has certain civil claims against Persico arising from Persico's application for a Second Draw PPP loan (the "Second Draw Loan")

on or about March 17, 2021, and SBA's forgiveness of that loan on or about July 23, 2021. That conduct is referred to below as the Covered Conduct.

E.  Specifically, the United States contends that, on its application for the Second Draw Loan, Persico falsely certified that it, together with its domestic and foreign affiliates, had fewer than 300 employees, which was a requirement to be eligible for the loan.

F.  This Settlement Agreement is neither an admission of liability by Persico nor a concession by the United States that its claims are not well founded.

G.  Persico admits the undisputed facts set forth in the attached Statement of Facts.

H.  Relator claims entitlement under 31 U.S.C. § 3730(d) to a share of the proceeds of this Settlement Agreement and to Relator's reasonable expenses, attorneys' fees and costs.

To avoid the delay, uncertainty, inconvenience, and expense of protracted litigation of the above claims, and in consideration of the mutual promises and obligations of this Settlement Agreement, the Parties agree and covenant as follows:

TERMS AND CONDITIONS

1.  Persico shall pay to the United States one million four hundred sixty-two thousand and forty-eight dollars and twenty-two cents ($1,462,048.22) (the "Settlement Amount"), of which nine hundred seventy-four thousand, six hundred ninety-eight dollars and eighty-one cents ($974,698.81) is restitution, by electronic funds transfer pursuant to written instructions to be provided by the Office of the United States Attorney for the District of Delaware no later than 30 days after the Effective Date of this Agreement.

2.      Within 30 days of the Effective Date of the Agreement, Persico will pay to Relator three thousand, four hundred and thirty seven dollars $3,547 for expenses, attorneys' fees, and costs pursuant to 31 U.S.C. § 3730(d). Persico and Relator agree that this amount represents reasonable expenses, attorney's fees, and costs for the Civil Action.

3.      Subject to the exceptions in Paragraph 5 below, and upon the United States' receipt of the Settlement Amount, the United States releases Persico together with its current and former parent corporations; direct and indirect subsidiaries; brother or sister corporations; divisions; current or former corporate owners; and the corporate successors and assigns of any of them from any civil or administrative monetary claim the United States has for the Covered Conduct under the False Claims Act, 31 U.S.C. §§ 3729-3733; the Program Fraud Civil Remedies Act, 31 U.S.C. §§ 3801-3812; or the common law theories of breach of contract, payment by mistake, unjust enrichment, and fraud.

4.      Subject to the exceptions in Paragraph 5 below, and upon the United States' receipt of the Settlement Amount, Relator, for itself and for its members, successors, attorneys, agents, and assigns, releases Persico from any civil monetary claim the Relator has on behalf of the United States for the Covered Conduct under the False Claims Act, 31 U.S.C. §§ 3729-3733.

5.      Notwithstanding the releases given in Paragraph 3 of this Agreement, or any other term of this Agreement, the following claims and rights of the United States are specifically reserved and are not released:

  a.      Any liability arising under Title 26, U.S. Code (Internal Revenue Code);

  b.      Any criminal liability;

3

      c.      Except as explicitly stated in the Agreement, any administrative liability or enforcement right, or any administrative remedy, including the suspension and debarment rights of any federal agency;

      d.      Any liability to the United States (or its agencies) for any conduct other than the Covered Conduct;

      e.      Any liability based upon obligations created by this Agreement;

      f.      Any liability of individuals.

6.      Relator and its members, successors, attorneys, agents, and assigns shall not object to this Agreement but agree and confirm that this Agreement is fair, adequate, and reasonable under all the circumstances, pursuant to 31 U.S.C. § 3730(c)(2)(B). In connection with this Agreement and this Civil Action, Relator and his/her heirs, successors, attorneys, agents, and assigns agree that neither this Agreement, any intervention by the United States in the Civil Action in order to dismiss the Civil Action, nor any dismissal of the Civil Action, shall waive or otherwise affect the ability of the United States to contend that provisions in the False Claims Act, including 31 U.S.C. §§ 3730(d)(3) and 3730(e), bar Relator from sharing in the proceeds of this Agreement. Moreover, the United States and Relator and his/her heirs, successors, attorneys, agents, and assigns agree that they each retain all of their rights pursuant to the False Claims Act on the issue of the share percentage, if any, that Relator should receive of any proceeds of the settlement of his/her claim(s), and that no agreements concerning Relator share have been reached to date.

7.      Relator, for itself and for its members, successors, attorneys, agents, and assigns, releases Persico, and its officers, agents, and employees, from any liability to

Relator arising from the filing of the Civil Action, or under 31 U.S.C. § 3730(d) for expenses or attorneys' fees and costs.

8. Persico waives and shall not assert any defenses Persico may have to any criminal prosecution or administrative action relating to the Covered Conduct that may be based in whole or in part on a contention that, under the Double Jeopardy Clause in the Fifth Amendment of the Constitution, or under the Excessive Fines Clause in the Eighth Amendment of the Constitution, this Agreement bars a remedy sought in such criminal prosecution or administrative action.

9. Persico fully and finally releases the United States, its agencies, officers, agents, employees, and servants, from any claims (including attorneys' fees, costs, and expenses of every kind and however denominated) that Persico has asserted, could have asserted, or may assert in the future against the United States, its agencies, officers, agents, employees, and servants, related to the Covered Conduct or the United States' investigation or prosecution thereof.

10. a. Unallowable Costs Defined: All costs (as defined in the Federal Acquisition Regulation, 48 C.F.R. § 31.205-47) incurred by or on behalf of Persico, and its present or former officers, directors, employees, shareholders, and agents in connection with:

    (1) the matters covered by this Agreement;

    (2) the United States' audit(s) and civil investigation(s) of the matters covered by this Agreement;

    (3) Persico's investigation, defense, and corrective actions undertaken in response to the United States' audit(s) and

civil investigation(s) in connection with the matters covered by this Agreement (including attorneys' fees);

(4) the negotiation and performance of this Agreement;

(5) the payment Persico makes to the United States pursuant to this Agreement and any payments that Persico may make to Relator, including costs and attorneys fees,

are unallowable costs for government contracting purposes (hereinafter referred to as Unallowable Costs).

b. Future Treatment of Unallowable Costs: Unallowable Costs will be separately determined and accounted for by Persico, and Persico shall not charge such Unallowable Costs directly or indirectly to any contract with the United States.

c. Treatment of Unallowable Costs Previously Submitted for Payment: Within 90 days of the Effective Date of this Agreement, Persico shall identify and repay by adjustment to future claims for payment or otherwise any Unallowable Costs included in payments previously sought by Persico or any of its subsidiaries or affiliates from the United States. Persico agrees that the United States, at a minimum, shall be entitled to recoup from Persico any overpayment plus applicable interest and penalties as a result of the inclusion of such Unallowable Costs on previously-submitted requests for payment. The United States, including the Department of Justice and/or the affected agencies, reserves its rights to audit, examine, or re-examine Persico's books and records and to disagree with any calculations submitted by Persico or any of its subsidiaries or affiliates regarding any Unallowable Costs included in payments previously sought by Persico, or the effect of any such Unallowable Costs on the amount of such payments.

11. Persico agrees to cooperate fully and truthfully with the United States' investigation of individuals and entities not released in this Agreement. Upon reasonable notice, Persico shall encourage, and agrees not to impair, the cooperation of its directors, officers, and employees, and shall use its best efforts to make available, and encourage, the cooperation of former directors, officers, and employees for interviews and testimony, consistent with the rights and privileges of such individuals. Persico further agrees to furnish to the United States, upon request, complete and unredacted copies of all non-privileged documents, reports, memoranda of interviews, and records in its possession, custody, or control concerning any investigation of the Covered Conduct that it has undertaken, or that has been performed by another on its behalf.

12. This Agreement is intended to be for the benefit of the Parties only.

13. Upon receipt of the payment described in Paragraph 1, above, the United States and Relator shall promptly sign and file in the Civil Action a Joint Stipulation of Dismissal of the Civil Action pursuant to Rule 41(a)(1).

14. Each Party shall bear its own legal and other costs incurred in connection with this matter, including the preparation and performance of this Agreement.

15. Each Party and signatory to this Agreement represents that it freely and voluntarily enters into this Agreement without any degree of duress or compulsion.

16. This Agreement is governed by the laws of the United States. The exclusive jurisdiction and venue for any dispute relating to this Agreement is the United States District Court for the District of Delaware. For purposes of construing this Agreement, this Agreement shall be deemed to have been drafted by all Parties to this Agreement and

shall not, therefore, be construed against any Party for that reason in any subsequent dispute.

17. This Agreement constitutes the complete agreement between the Parties. This Agreement may not be amended except by written consent of the Parties.

18. The undersigned counsel represent and warrant that they are fully authorized to execute this Agreement on behalf of the persons and entities indicated below.

19. This Agreement may be executed in counterparts, each of which constitutes an original and all of which constitute one and the same Agreement.

20. This Agreement is binding on Persico's successors, transferees, heirs, and assigns.

21. This Agreement is binding on Relator's successors, transferees, heirs, and assigns.

22. All parties consent to the United States' disclosure of this Agreement, and information about this Agreement, to the public.

23. This Agreement is effective on the date of signature of the last signatory to the Agreement. Facsimiles of signatures shall constitute acceptable, binding signatures for purposes of this Agreement.

//

THE UNITED STATES OF AMERICA

                                                JULIANNE E. MURRAY
                                                UNITED STATES ATTORNEY

DATED: 10/9/25          BY: _____
                                                William E. LaRosa
                                              Assistant United States Attorney
                                              District of Delaware

PERSICO USA, INC.

DATED: Oct 6, 2025  BY: _____
Name: Shadi Alshakaa
Title: CEO of Persico USA, Inc.

DATED: Oct 6, 2025  BY: _____
James J. Mahon, Esq.
Counsel for Persico USA, Inc.

Verity Investigations, LLC

DATED: 10/6/2025  BY: *[signature]*

Name: Gregory Lynam
Title: Member

Verity Investigations, LLC

DATED: 10/7/2025  BY: *[signature]*

Stephen M. Shepard
Susman Godfrey LLP
*Counsel for Verity Investigations, LLC*

11

## STATEMENT OF FACTS

1. Persico USA, Inc. ("Persico") is a Delaware Corporation with its principal place of business in Rochester Hills, Michigan.

2. In early 2020, as part of the Coronavirus Aid, Relief, and Economic Security Act ("CARES Act"), Congress created the Paycheck Protection Program ("PPP"), a loan program that was administered by the United States Small Business Administration ("SBA").

3. In early 2021, SBA authorized a second series of PPP loans, generally referred to a "Second Draw" PPP loans. To be eligible for a Second Draw loan, applicants were required to certify that they, together with any of their affiliates, had fewer than 300 employees.

4. On March 17, 2021, Persico applied for and obtained a Second Draw PPP loan in the amount of $970,922. On the Second Draw loan application, Persico certified that it, together than its affiliates, had fewer than 300 employees.

5. On July 23, 2021, Persico applied and received forgiveness of the Second Draw loan. On the forgiveness application, Persico certified that it, together with its affiliates, had only 60 employees at the time of the Second Draw loan application.

6. At all times between March 17, 2021, and July 23, 2021, Persico—together with its domestic and foreign affiliates as defined by the SBA's affiliation rules under 13 C.F.R. § 121.301(f), including Persico SPA—had more than 300 employees.